

**SIGNED this 10 day of June, 2011.**

_____
**JOHN T. LANEY, III
CHIEF UNITED STATES BANKRUPTCY JUDGE**
_____

IN THE UNITED STATES BANKRUPTCY COURT
MIDDLE DISTRICT OF GEORGIA
COLUMBUS DIVISION

| | | |
|---|---|---|
| IN RE: | ) | |
| | ) | CASE NO.: 09-40692- JTL |
| MICHAEL ANTHONY RYLES & | ) | |
| JORETHA WILLIS RYLES, | ) | |
| | ) | CHAPTER 13 |
| Debtors. | ) | |
| _____ | ) | |

**MEMORANDUM OPINION**

This matter comes before the Court on a Motion to Use Cash Collateral filed by the debtors on May 2, 2011 and The Peoples Bank of Talbotton's objection filed on May 9, 2011. The Court heard oral arguments on the motion and objection on May 23, 2011. At the conclusion of the hearing, the Court took the matter under advisement. For the reasons set forth below, the Court grants the debtors' motion in part and denies it in part.

**Background**

The Peoples Bank of Talbotton ("the Bank") is the holder of, collectively, five promissory notes against the debtors, either individually or jointly. Michael Ryles is indebted to the Bank by virtue of a promissory note dated June 14, 2008, with a current payoff amount of $7,070.70. This loan was used to purchase a 2006 Dodge Charger, which was given as collateral to secure the loan. Joretha Ryles is indebted to the Bank by virtue of a promissory note dated August 1, 2008, with a current payoff amount of $1,218.85. Michael Ryles is obligated to the Bank by virtue of a note dated September 30, 2008, with a current payoff amount of $4,699.26. This loan was used to purchase real estate located at 197 Carter Road, Talbotton, Georgia; the real estate was given as collateral to secure the loan. Joretha Ryles is indebted to the Bank by virtue of a note dated October 7, 2008, with the current payoff amount of $294.82. And finally, both Michael Ryles and Joretha Ryles are indebted to the Bank by virtue of a noted dated January 30, 2009, with a current payoff amount of $26,867.13. The funds from this loan were used to purchase the debtors' home, located at 175 Dozier Street, Talbotton, Georgia. This real estate was used as collateral to secure the note.

The debtors' home was destroyed in a fire postpetition. The Security Deed grants the Bank the right to any insurance proceeds payable by reason of loss or damage to the property. The Bank currently possesses a check in the amount of $107,000.00 representing the insurance proceeds; these proceeds are the subject of the debtors' motion to use cash collateral. The debtors collectively owe the Bank $39,855.94, exclusive of interest after May 5, 2011, attorney fees, and expenses. Both parties agree that the lien

on the real estate extends to the insurance proceeds, but they disagree over the lien's reach.

The Bank contends that by operation of a dragnet clause included in the security deed to the debtors' home,[1] it is entitled to use the insurance proceeds to offset all amounts owed by the debtors collectively, with the balance being paid over to the debtors. The debtors claim that the dragnet clause is ineffectual against all prior debts because of a lack of identity between parties in the Security Deed and the parties in prior notes. Alternatively, the debtors' argue that because the debt on the Dodge Charger is a purchase money security interest in a motor vehicle incurred within 910 days of the filing date, and because the Bank is being paid in full through a confirmed Chapter 13 plan, the debt cannot be secured by anything other than the item purchased and that debt should be excluded from the reaches of the dragnet provision.

## CONCLUSIONS OF LAW

Section 44-14-1(b) of the O.C.G.A. states that dragnet clauses (also known as open-end clauses) are limited to other debts and obligations arising "between the original parties to the instrument." In its first paragraph, the security deed containing the dragnet clause designates the debtors jointly as "Grantor," in the singular. The debtors' argument is that because the security deeds has "grantor" in the singular the deed refers to "grantor" as both the debtors jointly, any debt being included through the dragnet clause must have been entered into by the debtors jointly—any debts entered into individually could not be dragged in because they would run afoul of the "original parties" requirement of O.C.G.A. § 44-14-1(b).

---

[1] The security agreement covering the 2006 Dodge Charger and the Deed to Secure Debt covering the debtor's other real estate also both include dragnet clauses. These dragnet clauses are not at issue.

The debtors rely on this original parties requirement and In re Felker, 181 B.R. 1017 (M.D. Ga. 1995). The rule of law from In re Felker is, "[W]here deeds to secure debt containing dragnet clauses are entered into jointly by the grantors, and there is no evidence that the parties intended the deed to secure the subsequent several liability of one of the grantors, the dragnet clauses will only secure the grantors' subsequent joint liabilities. 181 B.R. at 1021. The court in that case discussed several Georgia state cases that analyzed situations in which this intent to secure the individual liability of one of the grantors could and could not be found. One Georgia case discussed is Sutton v. Atlantice Bank and Trust Co., 167 Ga. App. 861, 205 S.E.2d 746 (1983).

The Sutton case also involved joint signatories of a deed to secure debt, and the deed in that case also referred to joint parties as "Grantor" in the singular. The deed specifically defined "Grantor" to include the singular and plural. Id. at 862, 207 S.E.2d at 746. The Court of Appeals of Georgia ultimately held that this demonstrated an intent that the dragnet clause would secure individual debts of the deed's signatories. Id., 207 S.E.2d at 747. The court in In re Felker distinguished the facts before it from the facts in Sutton. In Felker, the deed to secure debt referred to the joint debtors as the "first party," and the dragnet clause stated that the deed was intended to secure the future indebtedness of the "Grantors," but the deed did not indicate that the parties intended the dragnet clause to operate on the debtors' subsequent individual liabilities. 181 B.R. at 1021. The court subsequently held that the dragnet clause did not operated to secure the debtors' individual debts.

As stated above, the security deed in this case refers to both debtors as "grantor." However, near the end of the deed is the following language: "Wherever 'Grantor' or

"Grantee' or a pronoun relating to either appear herein, same shall be construed to mean both the singular and the plural, … and if there be more than one Grantor herein, 'Grantor' shall also mean each and all of them, jointly and severally."  Moreover, the dragnet clause itself states (with emphasis added),

> This indenture secures not only the Specific Debt above described, but also renewals and extensions of same or any part thereof. Additionally, it secures all other and further indebtedness and liability of every nature, whether direct, indirect, or contingent, that Grantor (*or any one or more of Grantors, if there be more than one*) ….

The deed in no less than two places demonstrates a clear intent for the real estate to secure individual liabilities of the debtors.  The Court thus cannot grant the motion to the extent the debtors request that the Bank may only retain the balance left on the real estate note.

The debtors' Chapter 13 plan was confirmed on September 18, 2009.  The plan treats the Bank's claim on the debtors' vehicle by paying the Bank in full.  The Bank did not object to this treatment.  Because the Bank is bound by the terms of the Chapter 13 plan, the Bank cannot retain the $7,070.70 representing the amount still owing on the vehicle.  The Bank can retain the amounts owed to it under all the debts minus the amount owed to it for car note, with the balance to be turned over to the debtors.

## Conclusion

The Court will grant the debtors' motion to the extent described above.  An order in accordance with this memorandum opinion will be entered.